**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **ERIC LEN LEWIS,** | ) | |
| | ) | |
| **Petitioner/Defendant,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL NO. 10-580-GPM** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **CRIMINAL NO. 09-40031-GPM** |
| | ) | |
| **Respondent/Plaintiff.** | ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

## I. BACKGROUND

Petitioner/Defendant Eric Len Lewis, who currently is serving a term of imprisonment of sixty months in the custody of the United States Bureau of Prisons for mail fraud and money laundering, brings this action pursuant to 28 U.S.C. § 2255 to challenge his sentence. Currently this matter is before the Court on a motion to dismiss Lewis's Section 2255 petition brought by Respondent/Plaintiff United States of America, construed by the Court as a partial response to Lewis's Section 2255 petition (Doc. 8). The relevant facts and procedural background of the case are as follows. Lewis was employed from July 15, 2002, through May 7, 2007, as a district sales manager for Crow's Hybrid Corn Company ("CHCC"), a division of Channel Bio Corporation ("Channel"), which, in turn, is a company wholly owned by Monsanto Company ("Monsanto"). CHCC is in the business of selling corn and soybean seed to farmers. In his capacity as a district sales manager, Lewis was responsible for selling corn and soybean seed to clients, soliciting new customer accounts, administering all sales programs in accordance with the company policy of

CHCC and Monsanto, maintaining accurate sales, billing, and account records, assisting and supervising the collection of payments for sales accounts, and directing all customer and dealer seed payment checks to CHCC's company headquarters in Kentland, Indiana, immediately upon receipt. Lewis earned a base salary, together with commissions and performance bonuses based upon sales volume, and also was reimbursed for business-related expenses. At its peak, Lewis's salary with CHCC was $77,000 per year, plus commission and performance bonuses. In an effort to increase his sales volume and thereby increase his commissions and performance bonuses, Lewis began selling corn and soybean seed to customers at prices below the authorized sales prices established by CHCC and Monsanto. Lewis manipulated billing records to conceal the discounted sales from his employer. Additionally, Lewis, often in the company of third-party investors, bought corn and soybean seed from CHCC in large volumes at discounted prices, then resold the discounted seed to CHCC's customers at higher retail prices; Lewis entered into contracts with his third-party investors using the mails. The differential between the price at which Lewis and his third-party investors bought seed and the price at which the seed was resold generated profit for Lewis and his third-party investors. Lewis concealed from CHCC the fact that he personally purchased seed from his employer for resale.

Lewis's practice of secretly selling seed below authorized prices resulted in customer accounts reflecting deficiencies, according to CHCC's sales records, because Lewis's customers were not paying the authorized sales prices established by CHCC and Monsanto. To conceal his unauthorized discounted sales of seed, Lewis engaged in a Ponzi scheme whereby he applied payments for new seed orders to bring older accounts current. As a result of this practice, Lewis defrauded CHCC out of $4,247,391 in seed that was shipped to customers but that was never paid

for because of Lewis's manipulation of prices; Lewis's third-party investors lost in excess of $3,339,600. Lewis fraudulently endorsed and deposited a total of $14,520,301.36 in seed payment checks drafted by CHCC's customers and made payable to CHCC into two accounts controlled by him at the Clay County State Bank ("CCSB") in Louisville, Illinois. Lewis used a portion of the seed payments payable to CHCC in furtherance of his scheme to defraud. Seed payments were misapplied between client accounts to conceal the scheme, and those proceeds also were used to repay third-party investors who entered into resale investment contracts with Lewis. However, Lewis also used those proceeds for his own personal enrichment by converting the seed payments and using the money to pay for the construction of Lewis's home as well as a barn Lewis shared with his father on his father's property. Investigators found that Lewis paid various contractors and subcontractors who provided construction services to him a total of $229,102.94 out of Lewis's accounts at CCSB. Lewis also used $20,000 of the misappropriated funds to pay for cabinetry, desk tops, and shelves in his home. Lewis's Ponzi scheme was uncovered after a customer notified Monsanto's corporate security department that he had been approached by Lewis and offered the opportunity to purchase seed at below published prices.

On May 18, 2009, following extensive negotiations between, on the one hand, Lewis and his attorney, John P. Rogers, and, on the other hand, the government, represented by Assistant United States Attorney Steven D. Weinhoeft, Lewis pled guilty to a two-count information charging him with mail fraud, in violation of 18 U.S.C. § 1341, and one count of money laundering, in violation of 18 U.S.C. § 1957. At the time Lewis pled guilty he already had entered a cooperating plea agreement with the government. In the plea agreement, the government calculated that under the United States Sentencing Guidelines Lewis's offense level would be twenty-nine, so that with

one criminal history point Lewis's sentencing range would be between eighty-seven months and 108 months. Lewis and his attorney calculated in the plea agreement that Lewis would have an offense level of twenty-seven, so that with one criminal history point Lewis's sentencing range would be between seventy months and eighty-seven months. Among the terms of the plea agreement, as will be discussed in more detail presently, was a waiver by Lewis of his right to appeal from his sentence and to bring a collateral attack on his sentence. At the time of Lewis's sentencing on August 17, 2009, the United States Probation Office computed Lewis's offense level as twenty-seven, so that with one criminal history point Lewis's sentencing range was between seventy months and eighty-seven months. At sentencing, the government requested a below-Guidelines sentence of sixty months. Lewis's counsel, in turn, requested a sentence of thirty-six months. The Court after considering the factors enumerated in 18 U.S.C. § 3553(a), imposed a below-Guidelines sentence of sixty months. In support of the sentence, the Court cited the fact that Lewis had been convicted of a felony in Illinois state court in 2001 for theft in connection with a fraud committed by Lewis on the commodities market, the severe impact of Lewis's fraudulent scheme on his victims (CHCC, Monsanto, and Lewis's third-party investors), and the need to deter Lewis from committing similar such frauds in the future. Lewis also was ordered to pay restitution to his victims in the amount of $7,586,991.

Pursuant to 28 U.S.C. § 2255, Lewis now challenges his sentence on the grounds that, in the course of the criminal proceeding against him, he received ineffective assistance of counsel, in violation of the Sixth Amendment, and that his sentence constitutes cruel and unusual punishment, in violation of the Eighth Amendment. Among other things, Lewis alleges that counsel in the criminal proceedings against him was ineffective in failing to advise Lewis that, under the terms of

Lewis's plea agreement, Lewis waived the right to bring a collateral attack on his sentence in the criminal proceedings. Lewis asks that his sentence be reduced to thirty-six months. In turn, the government has moved to dismiss Lewis's Section 2255 petition on the basis of Lewis's waiver of the right to bring a collateral attack on his sentence in his plea agreement with the government. The Court construes the government's motion to dismiss Lewis's Section 2255 petition as a partial response to the petition. On October 20, 2010, the Court stayed the government's obligation to respond to Lewis's grounds for Section 2255 relief apart from the issue of the validity of the waiver of collateral attack on Lewis's sentence contained in the plea agreement between Lewis and the government; the Court held that in the event Lewis's petition is not dismissed by reason of the waiver, the government would supplement its response to Lewis's petition. In the October 20 order, the Court directed Lewis to respond to the government's motion within thirty days. Lewis now has responded to the motion, and the Court is ready to rule.

## II. DISCUSSION

As an initial matter, the Court notes the standard under which it must evaluate a petition brought pursuant to 28 U.S.C. § 2255. In general, the Court must grant a request to vacate, set aside, or correct a federal prison sentence when "the sentence was imposed in violation of the Constitution or laws of the United States[.]" 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996). Relief under Section 2255 is available only if an error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997) (quoting *Oliver v. United States*, 961 F.2d 1339, 1341 (7th Cir. 1992)). Petitions under Section 2255 are subject to

various bars, including that of procedural default. A Section 2255 petition is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir. 1996). Thus, such a petition cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir. 1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir. 1994). A claim of ineffective assistance of trial counsel may properly be raised in a Section 2255 petition regardless of whether the defendant raised the issue of ineffective assistance on direct appeal from his or her conviction. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Fuller v. United States*, 398 F.3d 644, 650 (7th Cir. 2005); *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir. 2001). In fact, the United States Court of Appeals for the Seventh Circuit has identified a Section 2255 petition as a more appropriate means than a direct appeal for raising claims of ineffective assistance of counsel, because in the former context the opportunity adequately to develop the factual predicate for the claim arises independent of the trial record. *See, e.g., United States v. Turcotte*, 405 F.3d 515, 537 (7th Cir. 2005) (quoting *Massaro*, 538 U.S. at 504) ("[I]n most cases a motion brought under § 2255 is preferable to direct appeal for deciding claims of ineffective-assistance[.]"); *United States v. Gilliam*, 255 F.3d 428, 437 (7th Cir. 2001) (noting that the rule that on direct appeal a reviewing court is limited to the trial record and cannot consider extrinsic evidence in support of a claim of ineffective assistance of counsel "almost invariably dooms" such a claim on direct appeal).[1]

---

1.    This perhaps is the place to note that, in some instances, a court may not dismiss a petition under 28 U.S.C. § 2255 without conducting an evidentiary hearing on the petitioner's claims. *See, e.g., Kafo v. United States*, 467 F.3d 1063, 1067 (7th Cir. 2006) (quoting *Bruce v.*

As already has been noted, the basis for the government's motion to dismiss Lewis's petition under 28 U.S.C. § 2255 is the waiver of Lewis's right to bring a collateral attack on his sentence in the plea agreement entered into between Lewis and the government in the course of the criminal proceedings against Lewis. Lewis contends, however, that the waiver is the product of ineffective assistance of counsel and therefore is invalid. To establish ineffective assistance of counsel, Lewis shoulders a heavy burden. He must "show that [his] counsel's performance was deficient, and that the deficiency prejudiced [his] defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id*. (quoting *Strickland*, 466 U.S. at 688). When a court reviews a claim of ineffective assistance of counsel, the court's review is "'highly deferential'" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable professional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002) (quoting *Strickland*, 466 U.S. at 689). Put another way, "[d]efense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.'" *Cooper v. United States*, 378 F.3d

---

*United States*, 256 F.3d 592, 597 (7th Cir. 2001)) ("[A] district court *must* grant an evidentiary hearing when the petitioner 'alleges facts that, if proven, would entitle him to relief.'") (emphasis in original). However, this is not such a case. In the Seventh Circuit, "in order for a hearing to be granted, the petition must be accompanied by a detailed and specific affidavit which shows that the petitioner has actual proof of the allegations going beyond mere unsupported assertions." *Barry v. United States*, 528 F.2d 1094, 1101 (7th Cir. 1976) (footnote omitted). Such an affidavit is a "threshold requirement for securing an evidentiary hearing," and without such an affidavit no such hearing can be granted. *Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) (citing *Prewitt*, 83 F.3d at 819). *See also Kafo*, 467 F.3d at 1067 ("We have referred to the affidavit as a threshold requirement; its absence precludes the necessity of a hearing."). In this case Lewis has not submitted the requisite affidavit so as to procure an evidentiary hearing on his Section 2255 petition, and therefore the Court is not obliged to conduct an evidentiary hearing.

638, 641 (7th Cir. 2004) (quoting *United States v. Traeger*, 289 F.3d 461, 470 (7th Cir. 2002)).

To succeed on his claim, Lewis must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to him] by the Sixth Amendment[.]" *Holman*, 314 F.3d at 839 (quoting *Strickland*, 466 U.S. at 687). *See also Williams v. Chrans*, 894 F.2d 928, 935 (7th Cir. 1990).

With respect to a waiver of the right to appeal or to bring a collateral attack on a sentence contained in a plea agreement, "[p]lea agreements are governed by ordinary contract principles." *United States v. Barnes*, 83 F.3d 934, 938 (7th Cir. 1996). *See also United States v. Bradley*, 381 F.3d 641, 648 (7th Cir. 2004); *United States v. Williams*, 198 F.3d 988, 993-94 (7th Cir. 1999). Thus, the Court will enforce such a waiver "if its terms are clear and unambiguous and the record shows that the defendant knowingly and voluntarily entered into the agreement." *United States v. Blinn*, 490 F.3d 586, 588 (7th Cir. 2007).[2] Courts may consider a defendant's signature on a plea agreement and his or her statements during the plea colloquy as evidence of a knowing and voluntary waiver. *See United States v. Jemison*, 237 F.3d 911, 917-18 (7th Cir. 2001) (finding that statements made by a defendant during a plea colloquy showed that the defendant's waiver of the right to appeal was knowing and voluntary); *United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("Most waivers [of the right to appeal or to mount a collateral attack]

---

2.    *Blinn* in fact involved a waiver of the right to appeal a sentence contained in a plea agreement, rather than, as is at issue in this case, a waiver of the right to bring a collateral attack on a sentence. However, the Seventh Circuit Court of Appeals has recognized that waivers of collateral attack are functionally identical to waivers of appeal rights. *See Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) (noting that the same requirements for upholding the validity of a waiver of the right to appeal "apply with equal force to the right to bring a collateral attack pursuant to § 2255"). Accordingly, the Court cites to cases involving waiver of appeal rights and cases involving waiver of collateral attack interchangeably in this Order.

are effective when set out in writing and signed[.]").  "[A] careful plea colloquy under Rule 11 [of the Federal Rules of Criminal Procedure] ensures that the guilty plea is knowing and voluntary[.]" *Schuh*, 289 F.3d at 975.  Further, "the law of this Circuit is clear that the court is not required to conduct a specific dialogue with the defendant concerning the waiver, so long as the record contains sufficient evidence for the court to determine if the defendant has knowingly and voluntarily waived his or her right to appeal." *United States v. Woolley*, 123 F.3d 627, 632 (7th Cir. 1997) (citing *United States v. Agee*, 83 F.3d 882, 884 (7th Cir. 1996)).  Also, representations made during plea hearings are "entitled to a presumption of verity." *United States v. Pike*, 211 F.3d 385, 389 (7th Cir. 2000).

Nevertheless, although a valid waiver of the right to appeal or to bring a collateral attack on a sentence may be binding in other respects, it does not preclude judicial review of a claim that the plea agreement itself was the product of ineffective assistance of counsel.  *See United States v. Sines*, 303 F.3d 793, 798 (7th Cir. 2002); *United States v. Joiner*, 183 F.3d 635, 644-45 (7th Cir. 1999).  Therefore, if a defendant can demonstrate ineffective assistance of counsel with respect to the negotiation of a waiver of the right to appeal or to bring a collateral attack, then the waiver is not effective against a challenge pursuant to 28 U.S.C. § 2255.  *See Mason v. United States*, 211 F.3d 1065, 1069 (7th Cir. 2000) (quoting *Jones*, 167 F.3d at 1145) ("[W]e reiterate that waivers are enforceable as a general rule; the right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver.") (emphasis omitted).  As the Seventh Circuit Court of Appeals has instructed, "even an ineffective assistance claim cannot survive a waiver unless the claim relates specifically to the voluntariness of the waiver itself."  *Bridgeman v. United States*, 229 F.3d 589, 593 (7th Cir. 2000).

That is, ineffective assistance claims related to anything other than the plea negotiation – related to counsel's performance at sentencing, for example – are barred by an enforceable waiver. *See United States v. Behrman*, 235 F.3d 1049, 1051 (7th Cir. 2000) ("Some constitutional theories – particularly claims that the plea agreement was . . . the result of ineffective assistance of counsel – concern the validity of the plea agreement and thus would knock out the waiver of appeal along with the rest of the promises; all terms stand or fall together.").

Finally, with respect to plea colloquies, Rule 11 of the Federal Rules of Criminal Procedure governs the content of such a colloquy. "On December 1, 1999, a new subsection was added to what was then Rule 11(c), 'specifically to reflect the increasing practice of including provisions in plea agreements which require the defendant to waive certain appellate rights.'" *United States v. Sura*, 511 F.3d 654, 658 (7th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's note). "As part of the Rules' overhaul in 2002, the amendment was relocated to Rule 11(b)(1)(N) as a 'stylistic only' change." *Id*. As Rule 11 now stands, the rule provides, in relevant part,

> Before the court accepts a plea of guilty or nolo contendere, the defendant may be placed under oath, and the court must address the defendant personally in open court. During this address, the court must inform the defendant of, and determine that the defendant understands . . . the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence.

Fed. R. Crim. P. 11(b)(1)(N). *See also United States v. Loutos*, 383 F.3d 615, 617-18 (7th Cir. 2004). Rule 11(b)(1)(N) was in force at the time of Lewis's guilty plea. A violation of Rule 11 to which a timely objection is not made by a defendant's counsel will be grounds to vacate a guilty plea only if the violation constitutes plain error. *See Sura*, 511 F.3d at 658. To satisfy the demanding plain-error standard, "the defendant who sat silent at trial has the burden to show that his 'substantial rights' were affected" by a trial court's failure to comply with Rule 11. *Id*. (quoting

*United States v. Vonn*, 535 U.S. 55, 63 (2002)).  Also, "a defendant has the further burden to persuade the court that the error seriously affected the fairness, integrity or public reputation of judicial proceedings." *Id*. (quotation marks and brackets omitted).  Put another way, the defendant who pled guilty without objecting to an error in the plea colloquy is "obliged to show a reasonable probability that, but for the Rule 11 error, he would not have entered the plea." *Id*. (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 76 (2004)) (brackets omitted).  *See also United States v. Williams*, 559 F.3d 607, 612 (7th Cir. 2009) ("*Dominguez Benitez* . . . holds that in order to demonstrate that his substantial rights were affected by a defect in the Rule 11 plea colloquy that he did not bring to the district court's attention, a defendant must convince the court that it is reasonably likely that he would not have pleaded guilty had he been properly apprised of his rights.").  In sum, the court "must look to the totality of the circumstances surrounding the negotiation of [a defendant's] plea agreement and the court's acceptance of the plea to determine whether the district court's failure to mention [the defendant's] plea agreement waiver of appellate rights during the plea colloquy constitutes plain error.  This includes evidence outside the Rule 11 colloquy." *Sura*, 511 F.3d at 659 (citing *Vonn*, 535 U.S. at 75).  Finally, a mere technical violation of Rule 11 is not a proper basis for a collateral attack on a sentence under 28 U.S.C. § 2255, absent evidence that the petitioner "was actually unaware of" a term of a plea agreement, "or that, if he had been properly advised by the trial judge, he would not have pleaded guilty." *Id*. at 660 (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).  In other words, the petitioner "must do more than show that [Rule 11] was technically violated.  He must show that his guilty plea was involuntary and that he would not have entered it on the basis of the record as a whole[.]" *Id*. (citing *Peguero v. United States*, 526 U.S. 23, 28 (1999)).

With the foregoing principles in mind, the Court turns to consideration of the validity of Lewis's waiver of his appeal right and his right to bring a collateral attack on his sentence in his plea agreement with the government. Lewis's plea agreement contains detailed provisions governing a waiver of his appeal rights and collateral attack rights that, for reasons that should become apparent presently, the Court will reproduce here at length:

III.

1. The Defendant understands that by pleading guilty, he is waiving all appellate issues that might have been available if he had exercised his right to trial. The Defendant states that he is fully satisfied with the representation he has received from his counsel, that they have discussed the Government's case, possible defenses and have explored all areas which the Defendant has requested relative to the Government's case and his defense.

2. The Defendant is aware that Title 18, Title 28 and other provisions of the United States Code afford every defendant limited rights to contest a conviction and/or sentence. Acknowledging all this, and in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. Defendant's waiver of appeal as set forth in this section specifically includes a waiver of any right to appeal a decision of the District Court to apply the specific offense characteristic of U.S.S.G. § 2B1.1(b)(2)(A), as well as a decision to impose a sentence that is consistent with the application of that guideline. The Defendant acknowledges that in the event such an appeal is taken, the Government reserves the right to fully and completely defend the sentence imposed, including any and all factual and legal findings supporting the sentence, even if the sentence imposed is more severe than that recommended by the Government. Defendant's waiver of appeal as set forth in this section specifically includes a waiver of any right to appeal a decision of the District Court to apply any specific offense characteristic as well as a decision to impose a sentence that is consistent with the application of those guidelines. Defendant knowingly and voluntarily waives his right to seek a pardon, whether before or after his release from custody.

3. Defendant's waiver of his right to appeal or bring collateral challenges shall not apply to: 1) any subsequent change in the interpretation of the law by the United States Supreme Court or the United States Court of Appeals for the

Seventh Circuit, which is declared retroactive by those Courts, and which renders the defendant actually innocent of the charges covered herein, and 2) appeals based upon Sentencing Guideline amendments which are made retroactive by the United States Sentencing Commission (see U.S.S.G. § 1B1.10). The Government reserves the right to oppose such claims for relief.

4. Defendant's waiver of his appeal and collateral review rights shall not affect the Government's right to appeal Defendant's sentence pursuant to Title 18, United States Code, Section 3742(b). This is because United States Attorneys lack any right to control appeals by the United States, through plea agreements or otherwise; that right belongs to the Solicitor General. 28 C.F.R. § 0.20(b).

5. Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any Department or Agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation, any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 552, or the Privacy Act of 1974, Title 5, United States Code, Section 552a.

6. Defendant waives all claims under the Hyde Amendment, Title 18, United States Code, Section 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

7. The Defendant acknowledges that the Government has provided complete discovery compliance in this case. Defendant states that he has reviewed said discovery compliance with his attorney. Defendant states that he has been advised that there may be items of physical evidence in this case which may contain biological evidence, such as semen, blood, saliva, hair, skin tissue, or other identifiable biological material, that could be subjected to DNA testing either now or in the future. Defendant understands that the Government does not intend to conduct DNA testing of any of the items of physical evidence. Defendant states that he has discussed with his attorney his rights regarding DNA testing on the physical items seized as evidence in this case and is satisfied that there is no need for DNA testing of any evidence in this case. The Defendant states that he has been advised of his rights under 18 U.S.C. §§ 3600 and 3600A. Defendant states that he waives those rights and consents to the destruction of all items of physical evidence seized in this case.

Doc. 8-1 (Plea Agreement) at 13-15 ¶¶ 1-7.[3]

---

[3] The page numbers of documents in the record of this case that are cited by the Court in this Order are the page numbers assigned to such documents by the Court's CM/ECF system and that appear as part of the header of each such document, rather than the page numbers that appear at the foot of each such document. To avoid confusion, wherever possible the Court has listed both the CM/ECF page number and the number of the paragraph wherein material cited by the Court in this Order appears in a document in the record of this case.

As shown above, the provisions of Lewis's plea agreement dealing with his waiver of the right to appeal from or bring collateral attacks on his sentence are set off by a roman numeral as one of three large sections that comprise the document (the other two sections of the plea agreement deal with, respectively, Lewis's agreement to cooperate with the government in the investigation of his offenses and the computation of his sentence under the Sentencing Guidelines). As the government points out, the provisions of Lewis's plea agreement dealing with his waiver of appeal and collateral attack rights constitute approximately one-fifth of the entire document, so that it is impossible for anyone reading the plea agreement to overlook the waiver provisions, which form in fact the final section of the agreement, right above the signatures of Lewis, his attorney, and the attorney for the government. The language of the waiver provisions is very clear and readily understandable even to a layperson, and, indeed, Lewis is not a mere layperson and instead, as already has been noted, he is a sophisticated businessperson with substantial experience in making and performing contracts, as well as prior experience with plea agreements, given that Lewis's theft conviction in 2001 was disposed of by a plea agreement. *See* Doc. 9 (Pre-Sentence Investigation Report) at 12-13 ¶ 45. Lewis's plea agreement with the government states expressly that Lewis is "fully satisfied with the representation he has received from his counsel" and that he "knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law[.]" Doc. 8-1 (Plea Agreement) at 13 ¶ 1, ¶ 2. Additionally, the plea agreement provides as follows: "The Defendant states that he has read this agreement and has discussed it with his attorney, and understands it." *Id*. at 6 ¶ 16. Lewis's signature on the plea agreement is, as already has been noted, proof of the truth of Lewis's representations contained in the plea agreement. Under the terms of the plea agreement, there is only

one circumstance in which Lewis is permitted to pursue post-conviction remedies, namely, "if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater)[.]" *Id*. at 13 ¶ 2. However, this is not the case here: in fact, as discussed, the sentence Lewis received was below (indeed, substantially below) the Sentencing Guidelines.

John Rogers, Lewis's attorney during the criminal proceedings, has given an affidavit which the government has submitted to the Court in support of its motion to dismiss. Rogers states in his affidavit that, just as the plea agreement represents, he specifically discussed with Lewis all of the terms of the plea agreement, including Lewis's waiver in the agreement of his right to appeal and to bring collateral attacks on his sentence:

> I fully reviewed the terms of the charging document, the stipulation of facts, and the plea agreement with Lewis. A material provision of the plea agreement was the Defendant's agreement to waive his rights to pursue a direct appeal and his agreement to waive his rights to pursue post-conviction remedies, with limited exceptions . . . . I specifically discussed these waivers with Lewis and he was fully aware that he was agreeing to give up these rights in exchange for the Government's concessions under the plea agreement. Lewis was an intelligent client who fully understood his appellate and post-convictions rights, as well as the other terms of the negotiations. During the entire time I represented Lewis, he admitted guilt and expressed a desire to plead guilty. Consequently, Lewis readily agreed to waive his appeal and post-conviction rights in order to obtain the most favorable negotiated disposition from the Government.

Doc. 8-5 (Rogers Affidavit) at 4-5 ¶ 6. Rogers points out also that Lewis actually participated in the negotiation of the terms of the waiver of appeal and collateral attack rights contained in his plea agreement with the government. According to Rogers, at the time the plea agreement was executed, the parties were unable to agree as to whether, under U.S.S.G. § 2B1.1(b)(2)(A), Lewis's offense level was subject to a two-level increase for an offense involving ten or more victims; Lewis, through Rogers, took the position that the offense characteristic should not apply because of the

interrelationship between many of the individuals and entities who were victimized. Lewis wished to litigate the issue of the applicability of the specific offense characteristic in his case while retaining his status as a cooperating defendant.

Lewis and the government agreed ultimately to litigate the issue of the applicability of U.S.S.G. § 2B1.1(b)(2)(A) in Lewis's case before the undersigned District Judge and to be bound by the undersigned's decision on that issue. Accordingly, two special provisions were inserted into the plea agreement. The first such provision, part of the second section of the plea agreement dealing, as noted, with Lewis's advisory sentence under the Sentencing Guidelines, stated,

> The Defendant reserves the right to present evidence and argument in support of his position that U.S.S.G. § 2B1.1(b)(2)(A) does not apply. As is set forth in Section III, *infra*, however, Defendant waives the right to appeal any decision by the District Court to apply the specific offense characteristic of § 2B1.1(b)(2)(A) as well as a decision to impose a sentence that is consistent with the application of that guideline.

Doc. 8-1 (Plea Agreement) at 10 ¶ 9. The second such provision is part of the third portion of the plea agreement, dealing with Lewis's waiver of appeal and collateral attack rights:

> Acknowledging all this, and in exchange for the recommendations and concessions made by the United States in this plea agreement, the Defendant knowingly and voluntarily waives his right to contest any aspect of his conviction and sentence that could be contested under Title 18 or Title 28, or under any other provision of federal law, except that if the sentence imposed is in excess of the Sentencing Guidelines as determined by the Court (or any applicable statutory minimum, whichever is greater), the Defendant reserves the right to appeal the reasonableness of the sentence. Defendant's waiver of appeal as set forth in this section specifically includes a waiver of any right to appeal a decision of the District Court to apply the specific offense characteristic of U.S.S.G. § 2B1.1(b)(2)(A), as well as a decision to impose a sentence that is consistent with the application of that guideline.

*Id*. at 13 ¶ 2. According to Rogers's affidavit, Rogers "specifically explained to Lewis that his agreement to refrain from pursuing any appeals or collateral relief also applied to the issue of whether to apply the specific offense characteristic of § 2B1.1(b)(2)(A) (10 or more

victims).” Doc. 8-5 (Rogers Affidavit) at 6 ¶ 7. Rogers states further, “Lewis understood that his limited right to litigate this issue applied only at the district court level, and that his waiver of appellate and post-conviction remedies barred further litigation of this issue.” *Id.* In fact, at sentencing the government did not request that the specific offense characteristic set out in U.S.S.G. § 2B1.1(b)(2)(A) be applied in Lewis’s case, one of numerous concessions by the government that, as will be discussed in more detail presently, Rogers was able to secure for his client.

At the hearing at which Lewis pled guilty, Lewis stated under oath that he had read and fully discussed the plea agreement with his attorney before signing it, and that his guilty plea pursuant to the agreement was knowing and voluntary:

> THE COURT: Okay. The plea agreement itself is kind of like a contract, sort of. You’re agreeing to do all the heavy lifting. The Government agrees to maybe be around for some of it. But I guess where I’m going with this is that the Government still retains substantial discretion in what they may or may not do for you, all right? Is that your understanding as well?
> MR. LEWIS: Yes, sir.
> THE COURT: And this is, as I said, fourteen numbered pages with page 14 being the signature line. It appears to me that your signature is on there. Do you have a copy in front of you, sir?
> MR. LEWIS: Yes, sir.
> THE COURT: And did you read this plea agreement before you signed it?
> MR. LEWIS: Yes.
> THE COURT: Did you review it carefully with Mr. Rogers before you signed it?
> MR. LEWIS: Yes.
> THE COURT: And let’s see. Your signature and his signature are on there. Did you sign this at or about the time you read it and reviewed it with him?
> MR. LEWIS: Yes, sir.
> THE COURT: All right. Are there any promises that anybody has made to you that are not contained in this plea agreement?
> MR. LEWIS: No, sir.
> THE COURT: This represents the entire agreement between you and the Government?
> MR. LEWIS: Yes.

Doc. 8-7 (Transcript of Plea Hearing) at 15-16. As the government acknowledges, Lewis’s plea

colloquy was defective in that the Court did not specifically address the waiver of appellate rights and collateral attack rights contained in Lewis's plea agreement, as required under Rule 11(b)(1)(N). However, as the government points out also, Lewis never challenged the error in his plea colloquy, whether at the plea hearing, on direct appeal, or in his petition under 28 U.S.C. § 2255. Typically, arguments for Section 2255 relief that are raised for the first time by way of a reply brief are deemed waived. *See Jennings v. United States*, 461 F. Supp. 2d 818, 833 (S.D. Ill. 2006). Additionally, the Court has no reason to suppose that the technical defect in Lewis's plea colloquy affected Lewis's substantial rights for purposes of plain-error analysis or that, but for the defect, Lewis would not have pled guilty.

As the government points out, the situation in this case is closely analogous to that addressed by the Seventh Circuit Court of Appeals in *United States v. Polak*, 573 F.3d 428 (7th Cir. 2009). In *Polak*, the defendant, who was charged with stealing a television set from a Veterans Administration hospital, pled guilty pursuant to a plea agreement in which he waived his right to appeal from his sentence. *See id*. at 430. After receiving a sentence that was heavier than the sentence requested by the government, Polak appealed from his sentence, arguing that his guilty plea was invalid because the trial court failed to address the waiver of appellate rights in Polak's plea agreement before accepting Polak's guilty plea and seeking to be re-sentenced. *See id*. at 430-31. Because Polak had not objected to the defect in his plea colloquy at the time the error was made, the court of appeals reviewed the trial court's blunder for plain error. *See id*. at 431. In determining whether the omission of part of the inquiry required by Rule 11 had prejudiced Polak, the reviewing court discussed the *Sura* case, in which the court of appeals found that the defendant's guilty plea was not knowing and voluntary in the absence of a proper and complete Rule 11 colloquy based on

the following factors: (1) the plea colloquy in *Sura* not only failed to mention the defendant's waiver of appellate rights, but also failed to ascertain whether the defendant went over the agreement with his attorney; (2) the defendant's age, mental condition, and confused responses to the trial court tended to indicate that he had not fully understood the plea agreement; and (3) the record failed to show any substitute that could replace the safeguards of Rule 11. *See id*. at 432 (citing *Sura*, 511 F.3d at 662). The *Polak* court identified several factors that distinguished Polak's case from the *Sura* case, including: (1) at Polak's plea colloquy the trial court inquired about whether Polak had gone over the agreement with his attorney, and Polak responded that he had; (2) Polak signed the plea agreement below a statement representing that he had reviewed all aspects of the plea with his attorney; (3) the court inquired about his knowledge of the appellate waiver, albeit after he entered the plea; (4) Polak had a high school education and a career in the military; and (5) the government had overwhelming evidence against Polak, making the acceptance of a plea agreement, with the appellate waiver, highly reasonable. *See id*. The *Polak* court added that "[p]erhaps most persuasive is the fact that Polak admits that he still wants to plead guilty (he just wants to be resentenced) – therefore, any argument that 'but for the error, he would not have entered the plea' must be viewed with skepticism." *Id*. (quoting *Sura*, 511 F.3d at 658). Accordingly, the *Polak* court found that the trial judge's error in failing to address Polak's waiver of his right to appeal from his sentence before accepting Polak's plea of guilty was harmless. *See id*. *See also United States v. Akinsola*, 105 F.3d 331, 334 (7th Cir. 1997) (rejecting the defendant's argument that "non-compliance with a single provision of Rule 11 requires that the defendant be allowed to plead anew" and stating instead that "[s]ubstantial compliance with Rule 11 is what is required, and we clearly have that here.").

As the government points out in this case, application of the *Polak* factors here shows clearly that the failure to address the waiver of post-conviction remedies in Lewis's plea agreement at Lewis's plea colloquy did not prejudice his substantial rights. First, at Lewis's plea colloquy the presiding judge inquired about whether Lewis had gone over the agreement with his attorney, and Lewis responded that he had. Second, Lewis signed the plea agreement below a statement representing that he had reviewed all aspects of the plea with his attorney. Third, although, unlike in *Polak*, there was no discussion of Lewis's waiver of appeal and collateral attack rights at Lewis's plea hearing, either before or after the guilty plea was taken, at Lewis's sentencing his attorney informed the Court that Lewis would not be appealing his sentence, and Lewis made no attempt to withdraw his guilty plea at that time. *See* Doc. 8-8 (Transcript of Sentencing Hearing) at 29-30.[4] Fourth, as already has been noted, Lewis is a sophisticated defendant. Unlike Polak, who had only a high school diploma, Lewis has fifty-four hours of college credit. Also, at the time Lewis pled guilty, he had been a successful salesman in a highly competitive business, earning, as noted, a base salary of $77,000 per year at the time his fraud was discovered; similarly, Lewis was earning an $80,000 annual salary plus bonuses with Becks Superior Hybrids, Inc., at the time of his sentencing. Thanks to Lewis's intimate knowledge of the commodities market, he was able to carry out a complicated fraud involving price manipulation, money laundering, and concealment of his crime through inter-account deposits. Also, as already has been noted, Lewis had prior familiarity with the criminal justice system and the plea-bargain process thanks to his conviction in 2001 for

---

4. This perhaps is the place to note that Lewis's guilty plea was taken by a United States Magistrate Judge, who then made a report and recommendation ("R & R") to the undersigned that the plea be accepted. Lewis had fourteen days from the date of service of the R & R to object thereto; Lewis filed no such objection.

theft.  Fifth, the government had overwhelming evidence of Lewis's guilt, much of it furnished by Lewis himself.  That Lewis never intended to contest his guilt is evidenced by the fact that Lewis negotiated a complete plea agreement with the government before he was formally charged with any crime.  Finally, as in *Polak*, it is not the case that, but for the mistake at his plea colloquy, Lewis would not have pled guilty, and instead Lewis asks merely to be re-sentenced, to three years' imprisonment rather than five years.  Examining the totality of the circumstances surrounding Lewis's guilty plea, the Court does not find plain error.[5]

As a final matter, the Court notes that Lewis's attorney, Rogers, was manifestly not ineffective, and instead was able to win concessions from the government during plea negotiations that netted Lewis a sentence under the Guidelines that was far below the sentence Lewis might have had to serve, absent such able counsel.  The Court already has noted that Lewis's counsel persuaded the government not to request a two-level increase in Lewis's offense level pursuant to U.S.S.G. § 2B1.1(b)(2)(A) for an offense involving ten or more victims, although the pre-sentence investigation report in Lewis's case identified eleven victims.  Also, Lewis's counsel persuaded the government not to argue that CCSB was a twelfth victim of Lewis's offense, because Lewis

---

5.    To the extent Lewis seems to argue that his attorney's failure to object to the error in Lewis's plea colloquy at the time the error was made is itself ineffective assistance of counsel, the Court disagrees.  As already has been noted, to satisfy the second prong of the *Strickland* test, prejudice, Lewis must show that his counsel's deficient performance actually prejudiced him.  In a case where a petitioner under 28 U.S.C. § 2255 pled guilty as a result of alleged ineffective assistance of counsel, to show prejudice the petitioner must prove that there is a reasonable probability that, but for counsel's deficient performance, the petitioner would not have entered a guilty plea and instead would have gone to trial.  *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985); *Hays v. United States*, 397 F.3d 564, 568 (7th Cir. 2005); *Bridgeman*, 229 F.3d at 592.  Here Lewis does not claim that he would not have pled guilty but for his counsel's ineffective assistance, and instead, as already has been noted, Lewis merely wants to be re-sentenced to the thirty-six months' imprisonment his attorney sought at Lewis's sentencing.

fraudulently endorsed checks that the bank honored and subjected the bank to potential liability for negotiating checks payable to CHCC that Lewis paid into his personal accounts in furtherance of his Ponzi scheme. Lewis's counsel persuaded the government not to seek a twenty-level increase in Lewis's offense level pursuant to U.S.S.G. § 2B1.1(b)(1)(K) for an offense involving a loss in excess of $7 million, even though the accurate loss amount in the case was calculated to be $7,586,991; notwithstanding the accurate loss amount, the government sought only an eighteen-level increase in Lewis's offense level. In addition, Lewis's counsel persuaded the government not to seek a two-level increase in Lewis's offense level pursuant to U.S.S.G. § 2B1.1(b)(14)(A) for an offense in which the defendant derived more than $1 million in gross receipts from one or more financial institutions. In negotiation with Lewis's counsel, the government agreed to ask for a sentence at the low end of the advisory Guidelines range determined by the Court, while leaving Lewis free to request a below-Guidelines sentence pursuant to 18 U.S.C. § 3553. Overall, Lewis's attorney successfully negotiated a six-point reduction in Lewis' offense level for purposes of the government's recommendation on sentencing in Lewis's case.

At sentencing the government identified Lewis's offense level as twenty-five, with one criminal history point, putting Lewis in a Guidelines sentencing range of fifty-seven to seventy-one months; as noted, the government asked for a sentence of sixty months. Absent Rogers's adroit negotiations with the government on Lewis's behalf, Lewis would have had an offense level of thirty-one, putting his sentence in a Guidelines range of 108-135 months; as Lewis's attorney points out, this sentencing range assumes a three-point reduction in Lewis's offense level for cooperation, although such a reduction likely would not have been offered absent the plea agreement Lewis and his attorney negotiated with the government. Given that Lewis's attorney successfully negotiated

a sentence that was up to seventy-five months less than the sentence Lewis might have faced, the Court can hardly say that Lewis's counsel was ineffective.  Finally and perhaps most remarkably, Lewis's counsel persuaded the government to reduce the number of charges in the case from six down to two and, in particular, not to charge Lewis as a felon in possession of a firearm.  During a search of Lewis's home in 2008 by agents of the United States Postal Inspection Service ("USPIS") and the Internal Revenue Service ("IRS") in connection with the offenses giving rise to Lewis's federal conviction, Lewis, who, as noted, was convicted of a felony in 2001, admitted to being in possession of a firearm and ammunition in his home.  Had the government elected to press charges pursuant to 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 924(a)(2), Lewis could have faced a sentence of up to ten years' imprisonment on a charge entirely separate from the charges of mail fraud and money laundering to which he pled guilty.

At Lewis's sentencing, his attorney explained candidly that, because of his client's extensive cooperation with the government in investigating Lewis's offenses, Lewis effectively denied himself the opportunity for a motion for a reduction of his sentence pursuant either to U.S.S.G. § 5K1.1 or Rule 35 of the Federal Rules of Criminal Procedure:

> *MR. ROGERS*: Your Honor, I'm asking the Court to consider a recommendation of 36-month sentence to the Bureau of Prisons.  Let me tell you how I arrived at that figure if I may.  Certainly the Court knows, and I appreciate the articulate job that Mr. Weinhoeft did in expressing to a large extent many of the arguments that I was going to be making as he talked about my client.  Much of what he said is accurate, and much of what he said I listed in my sentencing memorandum for you to consider in finding an appropriate sentence.
>
> I will elaborate, if I may, on the point that I made in Section 4 of my sentencing memorandum which deals with my client's cooperation.  The reason that I arrived at the 36 month, 35 month sentence is I was unsuccessful in lobbying Mr. Weinhoeft to file a 5K1.1 or motion pursuant to Rule 35.  And I'm pretty much – as the Court knows, that's a motion only the government can file.  I came to the conclusion having attended five to seven meetings which lasted several hours that in dealing with very intelligent and hard-working agents, both Agent Roderic [of

the USPIS] and Agent Anderson [of the IRS] that although they certainly gathered and had gathered plenty of evidence to convict my client that Eric rendered substantial assistance in a couple of ways.

Number one, I think he was much more expeditiously able to untie the knot of the fraud scheme that he had created from 2002 and 2007 and saved the government tremendous man-hours in trying to figure out exactly what he did with respect to a number of different clients that he had.

Number two, I do believe that the government had the impression that other individuals were involved in collusion with him, individuals at lending institutions, financial institutions, other managers, his supervisors, and the people that were around him at [CHCC] during the time period where he was employed there. During those proffers, I think – you know, and I will say this, I made it clear to Eric that your helping the government understand your criminal conduct and it's complexity isn't always enough to persuade the government to give you a 5K motion or Rule 35 motion. That it's been done before and I will urge Mr. Weinhoeft to consider doing so. But most often when the government reaches that conclusion they're able to charge other individuals, and your assistance in their prosecution is what the government values the most.

Even though Eric possessed this knowledge going into these proffers with government agents, he did the opposite. He not only accepted responsibility for his own actions, and not only did he tell the agents what he did, and although he may have the impression that other individuals were receiving benefit from his fraudulent activities, he exonerated other individuals and accepted responsibility himself to the detriment of his and my attempts to try to get him a Rule 35.

Doc. 8-8 (Transcript of Sentencing Hearing) at 18-20. However, although precisely by virtue of Lewis's extensive cooperation with the government he was unable to procure a request for a reduction of his sentence by the prosecution, it doubtless was because of this cooperation that Lewis's attorney was able to extract such remarkable concessions from the government with respect the calculation of Lewis's sentence under the Sentencing Guidelines and with respect to limiting the charges brought against Lewis. Lewis's attorney, using his client's cooperation as a bargaining chip, was able to negotiate with the government what was functionally the equivalent of a request for a sentence reduction, in the form of a calculation of Lewis's sentence that was vastly lower than the applicable range under the Sentencing Guidelines and in the form of a reduction of the number of charges brought against Lewis.

To summarize, the evidence is that Lewis was fully aware of the waiver of the right to bring a collateral attack on his federal sentence contained in his plea agreement with the government. In the copy of the agreement that Lewis signed, he represented that he had read the agreement and discussed all of its terms with his attorney. Additionally, his attorney during the criminal proceedings has given an affidavit attesting that he discussed all of the terms of the agreement with Lewis, including the waiver of post-conviction remedies, and that he and Lewis jointly negotiated the terms of the waiver. At his plea colloquy Lewis told the Court under oath that he had read the plea agreement and discussed all of its terms with his attorney and that his plea of guilty was knowing and voluntary and not the product of coercion. "Courts take the plea process seriously and hold defendants to their representations." *Hugi v. United States*, 164 F.3d 378, 381 (7th Cir. 1999) (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). *See also United States v. McFarland*, 839 F.2d 1239, 1242 (7th Cir. 1988) (stating that "disingenuous conduct by a defendant should not be allowed to thwart the process of determining guilt or innocence" and concluding, in refusing to allow a defendant to withdraw his guilty plea, that the defendant was "bound by his admissions of guilt and his assertions that his plea was voluntary" during his plea colloquy). Said differently, "[a] guilty plea is not a road-show tryout before the 'real' contest occurs in the [post-conviction] proceedings." *Hugi*, 164 F.3d at 382. "Rational conduct requires that voluntary responses made by a defendant under oath before an examining judge be binding. Such a requirement is consistent with reason and common sense." *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir. 1987). Moreover, "[b]ecause of the great weight we place on these in-court statements [by a criminal defendant], we credit them over [the defendant's] later claims." *United States v. Martinez*, 169 F.3d 1049, 1054 (7th Cir. 1999). While it appears that Lewis is somewhat dissatisfied now with the bargain that he

made with the government, the Court concludes that Lewis knowingly and voluntarily waived the right to bring a collateral attack on his federal sentence in his plea agreement with the government. Accordingly, Lewis's petition pursuant to 28 U.S.C. § 2255 is due to be dismissed.

### III. CONCLUSION

The government's request for dismissal of Lewis's petition for relief pursuant to 28 U.S.C. § 2255 (Doc. 8) is **GRANTED**, and this action is **DISMISSED with prejudice**. The Clerk of Court is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: June 11, 2011

/s/ G. Patrick Murphy
G. PATRICK MURPHY
United States District Judge